IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

**MICHAEL ALONZA RUFUS, #99284-071**　　　　　　　　　　　　　　**PLAINTIFF**

**versus**　　　　　　　　　　　**CIVIL ACTION NO. 5:08cv240-DCB-MTP**

**BRIAN BAILEY, et al.**　　　　　　　　　　　　　　　　　　　　**DEFENDANTS**

**REPORT AND RECOMMENDATION**

This matter is before the court on a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment [24] filed by Defendants, a Motion to Strike the Record of Defendants' Arguments, Declarations and Otherwise Pursuant to Rule 12(f) [31] filed by Plaintiff, and a Cross-Motion for Summary Judgment [32] filed by Plaintiff. Having reviewed the submissions of the parties, the entire record in this matter and the applicable law, and thus being fully advised in the premises, the undersigned recommends that Plaintiff's Motion to Strike and Motion for Summary Judgment [31] [32] be denied, that Defendants' Motion for Summary Judgment [24] be granted and that this matter be dismissed with prejudice.

FACTUAL BACKGROUND

Plaintiff Michael Alonza Rufus was convicted of conspiracy to possess and distribute 500 grams or more of cocaine, and "using and carrying a firearm during and in relation to and possessing a firearm during a drug trafficking crime." On October 17, 2003, Plaintiff was sentenced to concurrent terms of 37 and 60-months by the Honorable Judge Perry in the District of South Carolina. Plaintiff is projected to be released from serving his criminal sentence on July 8, 2010. *See* Exh. 1 to Defendants' Motion for Summary Judgment.

The instant lawsuit arises out of an Incident Report issued to Plaintiff on March 30, 2008 and related disciplinary proceedings conducted while Plaintiff was an inmate at the Federal

Correctional Complex in Yazoo City, Mississippi ("FCC Yazoo City").[1]  Specifically, Plaintiff was issued an Incident Report charging him with the following offenses:  refusing to obey the order of any staff; and being in an unauthorized area.  According to the Report, Officer Brian Bailey observed Plaintiff standing in the hallway talking to another inmate, and ordered Plaintiff to stop talking and go to his "cube."  Plaintiff refused to comply, despite being ordered multiple times.  Officer Bailey then told Plaintiff to present his identification card, but Plaintiff refused.  Plaintiff was placed in administrative detention, pending investigation of the Incident Report.  The Unit Disciplinary Committee ("UDC"), of which Defendant Varnado was the Chairperson and Defendant Fortenberry was a Member, conducted a hearing on March 31, 2008 and found Plaintiff guilty of the alleged offenses.  Plaintiff's punishment was 90 days' restriction of commissary and phone privileges.  *See* Cplt. & accompanying exhibits.

Plaintiff, proceeding *pro se*, filed this *Bivens*[2] action on or about July 14, 2008 against the following Defendants who worked at FCC Yazoo City during the relevant time period:  Officer Bailey; Carolyn Polk, Lieutenant; James A. Hutchins, Lieutenant; Alvin J. Fortenberry, Counselor and member of the UDC; and Katon L. Varnado, Counselor and Chairperson of the UDC.[3]  Plaintiff alleges "that the Defendants have acted contrary to procedural; mandates

---

[1] Plaintiff is currently incarcerated at the Federal Correctional Institution in Memphis, Tennessee.  Plaintiff was formerly incarcerated at FCC Yazoo City but was transferred because staff there considered him to be a management problem.  *See* Exh. 1A to Defendants' Motion for Summary Judgment.

[2] *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  A *Bivens* action mirrors a civil rights action brought under 42 U.S.C. § 1983, the difference being that a *Bivens* action applies to alleged constitutional violations by federal actors, while a section 1983 action applies to alleged constitutional violations by state actors.  *See Izen v. Catalina*, 398 F.3d 363, 367 n.3 (5th Cir. 2005).

[3] The Bureau of Prisons was dismissed as a defendant by Order [11] entered October 22, 2008.

established by their employer, within the applicable regulations, as it relates to plaintiff." See Cplt. at 5. Specifically, Plaintiff asserts several violations of the BOP's inmate discipline policy against Defendants, based on the events surrounding the Incident Report and the UDC hearing. *See* Cplt. at 5-8. Plaintiff also alleges that Defendant Varnado's actions were taken in retaliation for certain prior disciplinary actions involving Plaintiff and that by his actions, he violated Plaintiff's right to associate with his son by preventing him from being transferred to an institution closer to his son. *See* Cplt. at 8-9. Plaintiff seeks injunctive relief requiring the BOP to remove the disciplinary action from his record and to transfer him to a facility closer to his son. He also requests that Defendants be sanctioned "in accord with the applicable regulations of standards of employee conduct," that they be investigated, that they pay fees and any other just relief. *See* Cplt. at 10.

On December 29, 2008, Defendants filed their Motion to Dismiss or, in the Alternative, for Summary Judgment [24]. In their Motion, Defendants argue that Plaintiff's claims should be dismissed because: 1) Plaintiff has failed to exhaust his administrative remedies; 2) Plaintiff has failed to demonstrate a violation of his constitutional rights; and 3) Defendants are entitled to qualified immunity. Plaintiff filed his response to Defendants' motion, as well as a Motion to Strike the Record of Defendants' Arguments, Declarations and Otherwise Pursuant to Rule 12(f) [31] and a Cross-Motion for Summary Judgment [32] on February 19, 2009.

STANDARD

Summary judgment[4] shall be granted "if the pleadings, depositions, answers to

---

[4] Because the Defendants have submitted matters outside the pleadings with their Motion to Dismiss or, in the Alternative, for Summary Judgment [24], the motion should be characterized as a motion for summary judgment. *See* Fed. R. Civ. P. 12(b); *Young v. Biggers*, 938 F.2d 565, 568 (5th Cir. 1991).

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is proper "where a party fails to establish the existence of an element essential to his case and on which he bears the burden of proof." *Washington v. Armstrong World Indus.*, 839 F.2d 1121, 1122 (5th Cir. 1988). "A complete failure of proof on an essential element renders all other facts immaterial because there is no longer a genuine issue of material fact." *Id.*

This court may grant summary judgment only if, viewing the facts in a light most favorable to the plaintiff, the defendant demonstrates that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *Woods v. Smith,* 60 F.3d 1161, 1164 (5th Cir. 1995). If the defendant fails to discharge the burden of showing the absence of a genuine issue concerning any material fact, summary judgment must be denied. *John v. State of Louisiana,* 757 F.2d 698, 708 (5th Cir. 1985). The existence of an issue of material fact is a question of law that this court must decide, and in making that decision, it must "draw inferences most favorable to the party opposing the motion, and take care that no party will be improperly deprived of a trial of disputed factual issues." *Id.* at 712 (quoting *U.S. Steel Corp. v. Darby*, 516 F.2d 961, 963 (5th Cir. 1975)).

There must, however, be adequate proof in the record showing a real controversy regarding material facts. "Conclusory allegations," *Lujan v. National Wildlife Federation*, 497 U.S. 871, 902 (1990), unsubstantiated assertions, *Hopper v. Frank*, 16 F.3d 92, 96-97 (5th Cir. 1994), or the presence of a "scintilla of evidence," *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994), is not enough to create a real controversy regarding material facts. In the absence of proof, the court does not "assume that the nonmoving party could or would prove the

necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (emphasis omitted).

ANALYSIS

Plaintiff filed his complaint pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) and 28 U.S.C. § 1331. A *Bivens* action mirrors a civil rights action brought under 42 U.S.C. § 1983, the difference being that a *Bivens* action applies to alleged constitutional violations by federal actors, while a Section 1983 action applies to alleged constitutional violations by state actors. *See Izen v. Catalina*, 398 F.3d 363, 367 n.3 (5th Cir. 2005).

Exhaustion of Administrative Remedies

Defendants claim, in part, that this matter should be dismissed because Plaintiff has failed to exhaust his administrative remedies.[5] The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires prisoners to exhaust any available administrative remedies prior to filing suit under 42 U.S.C. § 1983 or "any other Federal law." Accordingly, federal prisoners filing suit under *Bivens* "must first exhaust inmate grievance procedures just as state prisoners must exhaust administrative processes prior to instituting a § 1983 suit." *Porter v. Russels*, 534 U.S. 516, 524 (2002); *see also Schipke v. Van Buren*, 239 Fed. Appx. 85, 86 (5th Cir. Aug. 30, 2007). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citations omitted).

---

[5] The BOP's Administrative Remedy Program ("ARP") is set forth at 28 C.F.R. § 542.10, *et seq*. The first step of the ARP process is the informal presentation of the issue to prison staff. If that does not resolve the issue, the inmate must submit a formal Request for Administrative Remedy. If the inmate is not satisfied with the warden's response to that request, he or she may submit an appeal to the appropriate BOP regional director, and may then appeal that decision to the General Counsel. That step "is the final administrative appeal" and its completion, therefore, constitutes exhaustion of administrative remedies.

A prisoner cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal" because "proper exhaustion of administrative remedies is necessary." *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006); *see also Johnson v. Ford*, 261 Fed. Appx. 752, 755 (5th Cir. Jan. 14, 2008) (stating that the Fifth Circuit takes "a strict approach" to the PLRA's exhaustion requirement) (citing *Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003)); *Richbourg v. Horton*, 2008 WL 5068680, at * 1 (5th Cir. Dec. 2, 2008) ("Exhaustion must be proper, meaning that the prisoner must comply with state procedural requirements, including filing deadlines.") (citation omitted); *Lane v. Harris Cty. Med. Dep't.*, 2008 WL 116333, at *1 (5th Cir. Jan. 11, 2008) (stating that under the PLRA, "the prisoner must not only pursue all available avenues of relief; he must also comply with all administrative deadlines and procedural rules").

"Exceptions to the exhaustion requirement are appropriate where the available administrative remedies either are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust such remedies would itself be a patently futile course of action." *Schipke*, 239 Fed. Appx. at 86 (*quoting Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir.1994)). The Fifth Circuit has taken the position that exceptions to the exhaustion requirement only apply in "extraordinary circumstances," and the prisoner bears the burden of demonstrating the futility or unavailability of administrative review. *Id.*

Plaintiff submitted his initial Request for Administrative Remedy at FCC Yazoo City (#489235-F1[6]) on April 10, 2008 on the issue of the incident report and the UDC hearing at issue

---

[6] As clarified by Defendants, a suffix "F1" indicates an institution-level submission of a Request for Administrative Remedy, a suffix of "R1" indicates a Regional-level appeal, and a suffix of "A1" indicates submission of an appeal to the Central Office level. A remedy number with the suffix "F2", "R2" or "A2" would indicate that the filing was the second submission to that particular level, and so forth

6

in the instant lawsuit. Plaintiff received a response dated May 2, 2008 denying him relief. *See* Cplt. at 1-2; Exhs.1-7 to Cplt; Exh. 4 to Defendants' Motion for Summary Judgment. Plaintiff then submitted a Regional Administrative Remedy Appeal of the decision (#489235-R1) on May 12, 2008, which was rejected on May 21, 2008 because Plaintiff had submitted more than one continuation page.[7] Plaintiff was advised that he could re-submit his appeal in the proper form within ten days of the date of the rejection notice. *See* Cplt at 2; Exhs. 8 & 9 to Cplt.; Exh. 4 to Defendants' Motion for Summary Judgment.

Plaintiff thereafter submitted numerous defective appeals. Specifically, Plaintiff submitted a Regional Administrative Remedy Appeal (#489235-R2) which was rejected on June 16, 2008 because it was still not in proper form.[8] Plaintiff was again informed that he could resubmit his appeal in the proper form within ten days of the date of the rejection. *See* Cplt. at 2; Exh. 12 to Cplt. Plaintiff also submitted an appeal to the Central Office (#498235-A1) which was rejected on June 13, 2008 because it was submitted to the wrong level (abbreviated as "WRL"), as Plaintiff had to properly complete processing at the Regional level. *See* Exh. 4 to Defendants' Motion for Summary Judgment. Plaintiff then submitted a Regional Administrative Remedy Appeal (#489235-R3) which was rejected on July 1, 2008 because Plaintiff had submitted more than one continuation page. Plaintiff was advised that he could resubmit his

---

[7] BOP regulations set forth the proper form to be used for appeals. "Appeals to the Regional Director shall be submitted on the form designed for Regional appeals (BP-10) and accompanied by one complete copy or duplicate original of the institution Request and response. Appeals to the General Counsel shall be submitted on the form designed for Central Office Appeals (BP-11) and accompanied by one complete copy or duplicate original of the institution and regional filings and their responses...." 28 C.F.R. § 542.15(b)(1). Inmates can use only one letter-size continuation page, if more space is needed. *See* 28 C.F.R. § 542.15(b)(3). Other than exhibits, there are no provisions for inmates to submit additional materials. *See* 28 C.F.R. § 542.15(b)(3).

[8] Apparently, Plaintiff had included extraneous materials. *See* Exhs. 10-12 to Cplt.

7

appeal in the proper form within 10 days of the date of the rejection notice. *See* ecf. doc. no. 32-2 at 5; Exhs. 4 & 4A to Defendants' Motion for Summary Judgment.

Plaintiff filed the instant lawsuit on July 14, 2008, while in the midst of attempting to exhaust his administrative remedies. Plaintiff submitted a Regional Administrative Remedy Appeal on July 15, 2008 (#498235-R4), which was rejected on July 28, 2008 because he had submitted more than one continuation page and had again submitted extraneous materials. Plaintiff was provided another opportunity to correct defects and resubmit the appeal. *See* Exhs. 4 & 4B to Defendants' Motion for Summary Judgment. Plaintiff submitted another Regional Administrative Remedy Appeal on August 12, 2008 (#498235-R5) which was rejected on August 28, 2008 because Plaintiff was found to be appealing more than one incident report, and because he raised an issue that he had not raised at the institutional level. Plaintiff was provided another opportunity to correct the defects and resubmit the appeal. *See* Exhs. 4 & 4C to Defendants' Motion for Summary Judgment. Plaintiff then submitted another Regional Administrative Remedy Appeal (#498235-R6), which was received at the Regional level on September 16, 2008, and rejected on September 23, 2008 as untimely.[9] *See* Exh. 4 to Defendants' Motion for Summary Judgment. Plaintiff then submitted a Central Office Administrative Appeal (#489235-A2) but it was rejected as untimely on October 29, 2008.[10] See Exh. 4 to Defendants' Motion for Summary Judgment.

In various filings with the court , Plaintiff appears to be arguing that he should be deemed

---

[9] 28 C.F.R. § 542.15(a) provides that "[a]n inmate who is not satisfied with the Warden's response may submit an Appeal on the appropriate form (BP-10) to the appropriate Regional Director within 20 calendar days of the date of the Warden signed the response."

[10] "An inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate form (BP-11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response." 28 C.F.R. § 542.15(a).

8

to have exhausted administrative remedies based on the BOP's failure to timely respond to his initial Request for Administrative Remedy.[11] *See*, *e.g.*, ecf. doc. no. 32, 50, 52. Even if the Warden's response were untimely, however, this would not excuse Plaintiff's lack of proper exhaustion. "The failure of prison officials to respond to a grievance does not constitute a valid excuse for failure to exhaust administrative remedies." *Johnson v. Cheney*, 2008 WL 534606, at * 3 (N.D. Tex. Feb. 8, 2008), *Report & Recommendations adopted*, 2008 WL 541762 (N.D. Tex. Feb. 27, 2008), *affirmed*, 2009 WL 614501 (5th Cir. Mar. 11, 2009) (citations omitted); *see also Curry v. Alexandre*, 2006 WL 2547062, at * 3 (W.D. La. June 19, 2006 (citing *Wright v. Hollingworth*, 260 F.3d 357, 358 (5th Cir. 2001)) ("a plaintiff cannot be excused from the PLRA's mandatory exhaustion requirements based on allegations that his grievance(s) was ignored."). Indeed, BOP policy provides authority for inmates who do not receive timely responses to administrative remedy submissions to pursue their appeals. *See* 28 C.F.R. § 542.18.[12] Plaintiff did attempt to pursue his appeals; however, he repeatedly submitted defective appeals.

It appears clear from the record that Plaintiff has failed to fulfill the requirements of the BOP's Administrative Remedy Program with respect to the claims asserted in this lawsuit.[13] Nor has Plaintiff established that any exception to the exhaustion requirement applies. Nevertheless,

---

[11] "Once filed, response shall be made by the Warden...within 20 calendar days." 28 C.F.R. 542.18. Plaintiff filed his Request for Administrative Remedy on April 10, 2008. Thus, according to Plaintiff, the Warden's response was due by April 30, 2008. The response from the Warden was dated May 2, 2008. *See* Cplt. at 1-2; Exhs.1-7 to Cplt; Exh. 4 to Defendants' Motion for Summary Judgment.

[12] "If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level."

[13] For this reason, Plaintiff's Motion to Strike [31], which seeks to strike Defendants' defense of failure to exhaust administrative remedies pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, clearly has no merit and should be denied.

9

the court further finds that Defendants are entitled to summary judgment on Plaintiff's claims on their merits, as discussed below, and that Plaintiff's claims against Defendants should be dismissed with prejudice.

Challenge to the disciplinary proceedings

"[T]he Due Process Clause does not protect every change in the conditions of confinement which has a substantial adverse effect upon a prisoner." *Madison v. Parker*, 104 F.3d 765, 767 (5th Cir. 1997) (citing *Sandin v. Conner*, 115 S.Ct. 2293, 2297 (1995)). Rather, the liberty interests which are protected by the Due Process Clause "are generally limited to state created regulations or statutes which affect the quantity of time rather than the quality of time served by a prisoner." *Id.* (citing *Sandin*, 115 S.Ct. at 2297). Accordingly, restrictions or loss of an inmate's commissary or telephone privileges - as those challenged in the instant case - "provide no basis for a claim of the denial of constitutional rights." *Palmisano v. BOP*, 258 Fed. Appx. 646, at * 2 (5th Cir. Dec. 11, 2007) (citations omitted); *see also Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997) (30 day restriction on commissary privileges did not implicate due process); *Lewis v. Dretke*, 54 Fed. Appx. 795, at * 1 (5th Cir. Dec. 11, 2002) (prisoner's claim challenging restriction of commissary privileges and loss of telephone privileges resulting from allegedly false discipline charges did not implicate due process).[14]

---

[14] Moreover, with the exception of Defendant Varnado, whom Plaintiff claims retaliated against him, Plaintiff merely alleges that Defendants violated various BOP Program Statements and provisions of BOP policy. *See*, *e.g.*, Cplt. at 5-7. However, it is well-settled that "a prison official's failure to follow the prison's own policies, procedures or regulations does not constitute a violation of due process, if constitutional minima are nevertheless met." *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996); *see also Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir. 1986) (mere failure of prison officials to comply with their own regulation is not a constitutional violation); *Bates v. Helman*, 175 F.3d 1019, 1999 WL 160966, at * 3 (7th Cir. Mar. 16, 1999) (BOP's violation of a Program Statement does not rise to the level of a constitutional violation). Thus, Plaintiff cannot establish any constitutional violations based on

Moreover, although not entitled to due process, the record demonstrates that, in fact, Plaintiff received due process. In order for a prison disciplinary decision to pass constitutional muster, there merely must be "some evidence" to show that the inmate committed the offense in question. *Superintendent, Massachusetts Correctional Institution v. Hill*, 472 U.S. 445, 455 (1985). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455-56. Indeed, even if the evidence is "meager," as long as there is "some evidence" to support the findings of the disciplinary board, its decision must be upheld. *Id.* at 456. In this case, there is clearly "some evidence" to support the findings of the disciplinary board, as the UDC relied upon the eyewitness report of Officer Bailey regarding the incident at issue. *See*, *e.g.*, *Neal v. Casterline*, 129 Fed. Appx. 113, at * 2 (5th Cir. Apr. 27, 2005) (DHO's report, based on incident report and eyewitness testimony of prisoner counsel, based on "some evidence"); *Cruz v. Menifee*, 2007 WL 4589789, at * 3 (W.D. La. Nov. 26, 2007) (DHO's finding, based on reporting officer's eyewitness investigation, satisfied "some evidence" standard).

With respect to procedural protections, due process in the context of prison discipline is not the same as due process in the criminal law context because "[p]rison discipline proceedings are not a part of a criminal prosecution, and the full panoply of rights due a criminal defendant does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Thus, due process is satisfied in prison disciplinary hearings when the inmate receives a finding from an impartial decision

---

the alleged violations of BOP program statements.

maker,[15] and also receives: 1) at least 24 hours advance written notice of the charges; 2) an opportunity to present documentary evidence and testimony from witnesses; 3) help from other inmates or staff, if needed (*e.g.*, if the inmate is illiterate or the charges are complex); and 4) a written statement of the evidence relied on and the reason for the disciplinary action. *Id.* at 564-70. The record in this case clearly reflects that Plaintiff received all of these protections. *See* Exhs. 2 & 3 to Cplt.

Based on the foregoing, it is clear that Defendants are entitled to summary judgment on Plaintiff's claims.

Claims regarding rights of association/transfer

Plaintiff allegess that Defendant Varnado has violated his right to be transferred to a facility closer to his son, thereby violating his right to associate with his son. *See* Cplt. at 8-9. However, the "right" to associate with his son by being transferred to a facility nearer to him is not a constitutional right. Plaintiff has no constitutional right to be incarcerated in a certain facility, even if life in one prison may be much more disagreeable than in another. *Id.* (citing *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Brown-Bey v. U.S.*, 720 F.2d 467, 470 (7th Cir. 1983)); *see also Steward v. Kelly*, 2006 WL 3825236, at * 4 (N.D. Miss. Dec. 27, 2006); *Hines v. Cain*, 2007 WL 891880, at * 14 (E.D. La. Mar. 20, 2007). Indeed, "it is well settled that under 18 U.S.C. § 3621(b),[16] the Bureau of Prisons may direct confinement in any available facility and

---

[15] Plaintiff argues that Defendant Varnado was not impartial because of a prior disciplinary action involving Plaintiff, and that he therefore retaliated against him. This claim will be addressed *infra*.

[16] "The Bureau of Prisons shall designate the place of the prisoner's confinement. The bureau may designate any available penal or correctional facility that means minimum standards of health and habitability...that the Bureau determines to be appropriate and suitable, considering – (1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and character of the prisoner; (4) any statement by the court that imposed the sentence...; and (5) any pertinent policy statement issued by the Sentencing Commission....The

12

may transfer a prisoner from one facility to another at any time." *Ready v. Fleming*, 2002 WL 1610584, at * 3 (N.D. Tex. July 19, 2002). Moreover, a prisoner has "no constitutional right to visitation privileges." *Berry v. Brady*, 192 F.3d 504, 508 (5th Cir. 1999) (citations omitted); *see also Thorne v. Jones*, 765 F.2d 1270, 1274 (5th Cir. 1985) (prisoners have no constitutional right to physical association with anyone); *Moore v. U.S. Attorney Gen'l*, 473 F.2d 1375, 1376 (5th Cr. 1973) (*per curiam*) (prisoner has no right to be housed near wife and children); *Brown-Bey*, *supra* (prisoner has no right to be transferred closer to friends and family). Accordingly, this claim has no merit.

Retaliation claim

Finally, Plaintiff alleges that Defendant Varnado's actions regarding the disciplinary matters at issue in this case were taken in retaliation for previous disciplinary matters. Specifically, Plaintiff points to a claim he filed on September 7, 2007 against Varnado under the Federal Tort Claims Act, in which it appears that he alleged that Varnado had failed to provide him with a BP-8 (Attempt at Informal Resolution) in order to present his grievance of being housed too far away from his family. This claim was denied on February 25, 2008. *See* Cplt. at 7; Exh. 15 to Cplt. Plaintiff also points to an Incident Report he received on October 17, 2007 from Varnado, charging him with "attempted possession of anything not authorized" and "using abusive or obscene language." Plaintiff was found guilty of these offenses by the UDC. Plaintiff appealed, arguing that he had not given 24 hours to prepare his defense. The Incident Report was remanded for a rehearing, at which Plaintiff was again found guilty of the offenses. *See* Cplt. at 7; Exh. 16 to Cplt. Finally, Plaintiff points out that Varnado is "directly involved" in five actions pending before this court. *See* Plaintiff's Cross-Motion for Summary Judgment [32] at 17.

---

Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another...."

The Fifth Circuit has held that in order to state a claim for retaliation,

> a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. The inmate must allege more than his personal belief that he is the victim of retaliation. Mere conclusionary allegations of retaliation will not be enough to withstand a proper motion for dismissal of the claim. The inmate must produce direct evidence of motivation or, the more probable scenario, 'allege a chronology of events from which retaliation may plausibly be inferred.' Further, if the inmate is unable to point to a specific constitutional right that has been violated, the claim will fail.

*Jones v. Greininger*, 188 F.3d 322, 324-25 (5th Cir. 1999) (citations omitted). The inmate must "allege the violation of a specific constitutional right and be prepared to establish that *but for the retaliatory motive* the complained of incident ... would not have occurred." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir.1995) (emphasis added). Most importantly, "[t]o assure that prisoners do not inappropriately insulate themselves from disciplinary actions by drawing the shield of retaliation around them, *trial courts must carefully scrutinize these claims*." *Id.* (emphasis added).

Plaintiff provides nothing more than his own conclusory allegations and personal beliefs that he was retaliated against. He provides neither direct evidence of retaliatory motivation, nor does he allege a chronology of events from which retaliation may plausibly be inferred.[17] Plaintiff also does not establish that but for the alleged retaliatory motive, he would not have been found guilty of the disciplinary offense at issue in this lawsuit. Rather, as noted *supra*, the decision of the UDC was supported by "some evidence" - namely, Officer Bailey's Incident Report. Thus, Defendants are entitled to summary judgment on Plaintiff's retaliation claim, as

---

[17] Indeed, the court notes that the events alleged to have caused Defendant Varnado to retaliate against Plaintiff occurred months before the disciplinary proceedings at issue in this lawsuit.

well.

## RECOMMENDATION

For the reasons stated above, it is the recommendation of the undersigned that Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment [24] be granted, that Plaintiff's Motion to Strike the Record of Defendants' Arguments, Declarations and Otherwise Pursuant to Rule 12(f) [31] be denied, that Plaintiff's Cross-Motion for Summary Judgment [32] be denied, and that this matter be dismissed with prejudice.[18]

## NOTICE OF RIGHT TO OBJECT

In accordance with the rules and 28 U.S.C. § 636(b)(1), any party within ten days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge and the opposing party. The District Judge at the time may accept, reject or modify in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within ten days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

---

[18] Although Defendants have also raised the defense of qualified immunity, "if it becomes evident that the plaintiff has failed to state or otherwise to establish a claim, then the defendant[s][are] entitled to dismissal on that basis." *Wells v. Bonner*, 45 F.3d 90, 93 (5th Cir. 1993) (citing *Siegert v. Gilley*, 500 U.S. 226, 231-33 (1991)); *see also Sappington v. Bartee,* 195 F.3d 234, 236 (5th Cir. 1999). Accordingly, having found that Plaintiff's claims are not cognizable as constitutional claims, the court need not reach the question whether Defendants are entitled to qualified immunity. *Wells*, 45 F.3d at 93.

THIS, the 20th day of May, 2009.

                                                s/ Michael T. Parker
                                                United States Magistrate Judge